Docket No. 106052.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

---

*In re* E.B. *et al.* (The People of the State of Illinois, Appellant, v. Phyllis B., Appellee).

*Opinion filed November 20, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

In the circuit court of Champaign County, Phyllis B.'s parental rights were terminated after her two children, E.B., age 6, and J.B., age 4, were adjudicated dependent under subsection (c) of section 2–4(1) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2–4(1)(c) (West 2006)), the so-called no-fault dependency provision. The appellate court, with one justice dissenting, reversed the judgment of the circuit court and remanded the cause for further proceedings. No. 4–07–0717 (unpublished order under Supreme Court Rule 23). The appellate court held that the plain language of section 2–4(1)(c) prohibits termination of parental rights when children have been adjudged dependent under that provision.

For the reasons that follow, we affirm the judgment of the appellate court.

Background

Phyllis B. is the mother of E.B. and J.B. Because the children's putative father, Fred DePriest, has been incarcerated for the majority of the children's lives, Phyllis has maintained sole responsibility for raising the children.

In November 2005, the State filed a petition for adjudication of wardship under section 2–3 of the Act (705 ILCS 405/2–3 (West 2006)), alleging that the children were (1) abused because Phyllis inflicted physical injury and created a substantial risk of physical injury to the children other than by accidental means and (2) neglected because their environment was injurious to their welfare since it exposed them to physical harm. Following a temporary custody hearing, the Department of Children and Family Services (DCFS) was awarded temporary custody and the children were placed in a relative's home.

In January 2006, the State filed an amended petition. In this petition, the State removed the allegations of abuse and neglect and alleged, instead, that the children were dependent under section 2–4(1)(c) of the Act because they lacked remedial or other care necessary for their well-being through no fault, neglect, or lack of concern by their parents.[1] At an adjudicatory hearing, Phyllis stipulated to the facts alleged in the amended petition. In return, the State moved to withdraw the original abuse/neglect petition, which motion the trial court granted. Thereafter, the trial court found that the allegations of the petition brought under section 2–4(1)(c) had been proven and found the children dependent. The dependency finding was based on the following facts: J.B. had extensive behavioral problems and ADHD, was verbally and physically abusive, and ran away from home; Phyllis lacked stable housing, had trouble maintaining J.B.'s ADHD medication, and was overwhelmed with parenting.

---

[1]Although the petitions related to both parents, DePriest is not a party to this appeal. As such, only Phyllis is referenced.

In April 2006, following a multipart dispositional hearing, the court found Phyllis unfit based on its finding that she had a very unstable lifestyle and had been evicted numerous times; she had an unrealistic understanding of financial issues; she lacked parenting skills; she repeatedly violated court orders in connection with visitation; she repeatedly lied; and she failed to accept responsibility for her poor decisionmaking. The children were again found to be dependent and made wards of the court. Custody and guardianship were removed from Phyllis and placed with DCFS. Phyllis was advised that she must cooperate with DCFS to remedy the situation, and she must comply with the terms of the service plans to correct the conditions or risk termination of her parental rights.

In December 2006, the State petitioned to terminate Phyllis' parental rights. At a permanency hearing in July 2007, the court found Phyllis unfit on each of the grounds alleged by the State:

(1) she failed to make reasonable efforts to correct the conditions that were the basis for removing the children;

(2) she failed to make reasonable progress toward her children's return within nine months after the no-fault dependency adjudication; and

(3) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of her children.

Thereafter, a best-interests hearing was held. After reiterating its previous findings that the children were dependent and Phyllis was unfit, the circuit court determined it was in E.B. and J.B.'s best interests to terminate Phyllis' parental rights. An order terminating Phyllis' parental rights was entered on August 15, 2007.

Phyllis appealed and the appellate court reversed, with one justice dissenting. The appellate court held that the plain language of section 2–4(1)(c) prohibits the termination of parental rights when children have been adjudicated dependent under the no-fault provision. Justice Cook dissented, arguing that section 2–4(1)(c) was ambiguous and, therefore, the court should consider the statute's purpose of protecting children's best interests, and it was in E.B. and J.B.'s best interests to terminate Phyllis' parental rights.

We granted the State's petition for leave to appeal under Rule 315 (210 Ill. 2d R. 315).

Analysis

A parent's right to raise his or her biological child is a fundamental liberty interest. *In re D.C.*, 209 Ill. 2d 287, 295 (2004). As such, a proceeding to involuntarily terminate a parent's rights is a "drastic measure." *In re D.C.*, 209 Ill. 2d at 295. In Illinois, the authority to involuntarily terminate parental rights is purely statutory and the scope of the court's authority is defined by the Juvenile Court Act and the Adoption Act. *In re D.C.*, 209 Ill. 2d at 295. These acts contain strict procedural requirements that embody Illinois' policy that favors parents' superior right to the custody of their own children. See *In re Y.B.*, 285 Ill. App. 3d 385, 390 (1996). When a court exercises its authority, it "must proceed within the confines of that law and has no authority to act except as that law provides." *People v. Brown*, 225 Ill. 2d 188, 199 (2007). A court " ' "is not free to reject or expand its statutory authority despite the desirability or need for such action." ' [Citations.]" *In re Jaime P.*, 223 Ill. 2d 526, 540 (2006). Any action the trial court takes that is outside the statute's stricture is void. *In re Jamie P.*, 223 Ill. 2d at 540.

Section 2–3 of the Act defines the circumstances under which a child is deemed neglected or abused. Section 2–4 defines the circumstances under which a child is deemed dependent. Section 2–4 provides four bases for finding a child dependent. Subsection (c), as noted above, is at issue in the case at bar. Prior to 1993, the text of subsection (1)(c) provided:

> "(1) Those who are dependent include any minor under 18 years of age ***
>
> ***
>
> (c) who is without proper medical or other remedial care recognized under State law or other care necessary for his or her well being through no fault, neglect or lack of concern by his parents, guardian or custodian, provided that no order may be made terminating parental rights, nor may a minor be removed from the custody of his or her parents for longer than 6 months, pursuant to an adjudication as a dependent minor under this subsection (c)[.]" 705 ILCS 405/2–4(1)(c) (West 1992).

In 1993, the legislature amended subsection (c), adding at the end of the paragraph the following language: ", unless it is found to be in his or her best interest by the court or the case automatically closes as provided under Section 2–31 [when a child turns 19 (or 21 under given circumstances)] of this Act." 705 ILCS 405/2–4(1)(c) (West 2006).

The appellate court found that the phrase "unless it is found to be in his or her best interest" modifies the prohibition against removing a child "from the custody of his or her parents for longer than 6 months," but does not modify the phrase "no order may be made terminating parental rights." Justice Cook, in his dissent, argued that the phrase "unless it is found to be in his or her best interest," grammatically, could modify both the prohibition against removing a child "from the custody of his or her parents for longer than 6 months" and the provision that "no order may be made terminating parental rights."

Prior to the 1993 amendment, the plain language of subsection (c) was interpreted as prohibiting termination of parental rights following a finding of dependency under that provision. See *In re Y.B.*, 285 Ill. App. 3d 385, 391 (1996); *In re A.F.*, 234 Ill. App. 3d 1010, 1015-16 (1991). The State, in its brief to this court, concedes this point, admitting that, under the preamended statute, parental rights could not be terminated following a determination of dependency under subsection (c), although parental rights could be terminated if a finding of dependency was made under the other dependency subsections of 4–2(1).

The question in the case at bar is whether subsection (c) of section 2–4(1), as amended, prohibits the State from seeking termination of parental rights. This is an issue of statutory interpretation. Specifically, we must determine whether the phrase "unless it is found to be in his or her best interest," which was added to the statutory provision in 1993, modifies only the phrase prohibiting the removal of a child "from the custody of his or her parents for longer than 6 months," as the appellate court majority held, or whether it also modifies the phrase "no order may be made terminating parental rights."

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Pack*, 224 Ill. 2d 144,

147 (2007). The language of the statute is the best indication of legislative intent, and we give that language its plain and ordinary meaning. *Pack*, 224 Ill. 2d at 147. We construe the statute as a whole and cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008).

The State contends that the appellate court erred in finding the statute unambiguous. According to the State, as Justice Cook opined, section 2–4(1)(c) is ambiguous because it is reasonable to interpret the phrase "unless it is found to be in his or her best interest" to modify both "from the custody of his or her parents for longer than 6 months" and "no order may be made terminating parental rights," but equally reasonable to interpret the phrase as modifying only the prohibition against removing a child "from the custody of his or her parents for longer than 6 months." The State maintains that it is impossible to determine from a plain reading of the statute which interpretation is correct and, thus, we must look beyond the plain language to the purpose of the Act, which is to promote and protect the best interests of children. According to the State, an interpretation of the amended statute as permitting the added phrase "unless it is found to be in his or her best interest" as modifying both "from the custody of his or her parents for longer than 6 months" and "no order may be made terminating parental rights" better promotes and protects the best interests of children and, therefore, should be adopted.

As noted, the appellate court held that the phrase "unless it is found to be in his or her best interest" modified only the phrase "from the custody of his or her parents for longer than 6 months." Although the appellate court did not expressly reference the last antecedent doctrine, it effectively employed that doctrine in its analysis. The last antecedent doctrine, a long-recognized grammatical canon of statutory construction, provides that relative or qualifying words, phrases, or clauses are applied to the words or phrases immediately preceding them and are not construed as extending to or including other words, phrases, or clauses more remote, unless the intent of the legislature, as disclosed by the context and reading of the entire statute, requires such an extension or inclusion. *City of Mount Carmel v. Partee*, 74 Ill. 2d 371, 375 (1979).

Here, the qualifying phrase "unless it is found to be in his or her best interest by the court" is immediately preceded by the phrase prohibiting a minor from being "removed from the custody of his or her parents for longer than 6 months." The phrase "no order may be made terminating parental rights" is more remote. Under the last antecedent doctrine, the qualifying phrase would only relate to the immediately preceding phrase. Thus, this canon would suggest that under subsection (c) custody can be removed for more than six months if it is in the child's best interests, but that parental rights cannot be terminated based upon a finding of dependency under this subsection.

Further, the presence of the term "nor" supports the same interpretation. The phrase "provided that no order may be made terminating parental rights, nor may a minor be removed from the custody of his or her parents for longer than 6 months" introduces conditions or limitations on the trial court's authority under subsection (c), *i.e.*, it means on condition that. Black's Law Dictionary 1261 (8th ed. 2004). Thus, when the trial court finds a child dependent under subsection (c), its authority is limited or conditioned in two ways: (1) it may not terminate parental rights and (2) it may not remove the child from his or her parents for longer than six months. The term "nor" is a disjunctive conjunction. "Generally, use of the disjunctive indicates alternatives and requires separate treatment of those alternatives, hence a clause *following* a disjunctive is considered inapplicable to the subject matter of the *preceding* clause." (Emphases added.) *Tietema v. State*, 926 P.2d 952, 954 (Wyo. 1996). See also Webster's Third International Dictionary 651 (1993). In section 2–4(1)(c), the phrase "unless it is found to be in his or her best interest" follows the second condition or limitation, *i.e.*, that the court cannot remove the child from his or her parents for longer than six months. This would suggest that the phrase modifies only the second condition or limitation and not the first.

However, there is a corollary rule to the last antecedent rule, discussed above, which suggests that the qualifying phrase could apply to both of the preceding phrases. According to this rule of punctuation, which was not recognized by the appellate court, "[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be

found in the fact that it is separated from the antecedents by a comma." 2A N. Singer, Sutherland on Statutory Construction §47:33, at 373 (6th ed. 2000). See *Advincula v. United Blood Services*, 176 Ill. 2d 1, 27 (1996) ("Significantly, there is no punctuation setting this qualifying phrase apart from the sentence which precedes it, which might connote that the phrase was intended to modify more remote terms"). Here, the presence of the comma before "unless it is found to be in his or her best interest" suggests that that phrase modifies both "removed from custody of his or her parents for longer than 6 months" as well as "no order may be made terminating parental rights."

Nevertheless, this punctuation rule is itself countered by the presence of the intervening clause, "pursuant to an adjudication as a dependent minor under this subsection (c)." This intervening clause comes after the clause expressing the conditions or limitations on the trial court's authority, thus suggesting the phrase "unless it is found to be in his or her best interest" was intended to apply only to the immediately preceding phrase.

The above aids to statutory construction fail to lead to an inescapable answer as to whether the qualifying phrase applies only to the immediately preceding phrase or whether it applies to both preceding phrases. Rather, these aids only serve to highlight the fact that the language of subsection (c) is "capable of being understood by reasonably well-informed persons in two or more different senses." *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). When statutory language is susceptible to more than one reasonable interpretation, the statute is considered ambiguous. *Jameson*, 162 Ill. 2d at 288. Here, contrary to the appellate court's holding, we find that the language of subsection (c) is ambiguous. Since the intrinsic aids do not resolve the ambiguity, resort to other aids or tools of interpretation, including legislative history and transcripts from legislative debates, is warranted.

Looking to the debates, we find that comments by the legislature clearly and strongly favor an interpretation that the phrase "unless it is found to be in his or her best interest" modifies only the phrase prohibiting a minor from being "removed from the custody of his or her parents for longer than 6 months." Representative Dart, the

sponsor of the bill which introduced the best-interests language, offered this explanation:

> "This Bill deals with a specific instance which is called 'no-fault' or lock-out cases in child abuse cases. This would *extend the period of time*. Right now there's an *arbitrary six-month period*, which is the present period that's allowed for these children. This would *expand it* depending on how far the court would need to deal with the child as far as his medical needs may go." (Emphases added.) 88th Ill. Gen. Assem., House Proceedings, April 26, 1993, at 30-31 (statements of Representative Dart).

Thereafter, Representative Dart further specified the purpose of adding "unless it is found to be in his or her best interest":

> "Basically, what it does, there's a *special scenario* that plays out where a child is not being able to get the medical attention they need from their parents through no fault of the parent, and so they're what they call lock-out cases where they physically are not allowed into the house by the parents. What this Bill would say is that the court, in these *specific cases*, *could allow for the court to monitor the cases longer than six months*. Right now in the statute, *we have a six month period of time* that's delineated, and everyone agrees it was an arbitrary number that was put together. In certain instances, it *takes more than six months to get the child back into the house*, and we just want the period of time to reflect however long it's going to take to get the child in.
>
> ***
>
> *** The lock-out basically is the term that they give it in the juvenile court system for the situation where there's nothing physically that is allowing the court to take the child out right now, but what they're saying is that the parent and the child basically are the mother's not letting the child into the house and physically the kid's on the street, and this would allow the court to intervene in that situation." (Emphases added.) 88th Ill. Gen. Assem., House Proceedings, April 26, 1993, at 31-32 (statements of Representative Dart).

See also 88th Ill. Gen. Assem., Senate Proceedings, May 18, 1993, at 133 (statements of Senator Barkhausen) ("It repeals the six-month limitation during–period during which a minor could be removed from the home if the court should find it is in the best interest of the minor for the child to be removed or to stay removed for a longer period of time"); 88th Ill. Gen. Assem., Senate Proceedings, June 29, 1993, at 36 (statements of Senator Barkhausen) ("The original bill and this current measure repeals a–a six-month limitation that a minor is allowed to be declared a dependent–or allows a minor to be removed from his parents if it is determined to be in the best interests of the minor").

The comments repeatedly and definitively establish that the amendment was meant to expand the *six-month* time period. There is no question that this time period applies solely to the removal of a child from the custody of his or her parents. The purpose of the amendment was to allow the trial court flexibility in determining whether to allow a child to remain outside the custody of his or her parents for longer than six months *if* it is in his or her best interests. There is no reference in the debates to the provision prohibiting termination of parental rights. Had the legislature intended for the phrase "unless it is found to be in his or her best interest" to apply to the prohibition against terminating parental rights, it would have made reference to that limitation as well.

Having reviewed the legislature's comments, we find that the legislature intended the qualifying phrase "unless it is found to be in his or her best interest" to modify only the phrase which prohibits the removal of a child "from the custody of his or her parents for longer than 6 months." Absolutely nothing in the debates suggests that the legislature intended to alter the directive that "no order may be made terminating parental rights."

As further support for our interpretation, we note that the legislature added two exceptions through the 1993 amendment: the best-interests exception and the automatic-closure exception based on section 2–31. The phrase "no order may be made terminating parental rights" cannot logically be modified by the second exception, "unless the case automatically closes as provided under Section 2–31 of this Act [addressing closure when the child turns 19]." Not only is an order terminating parental rights not necessary when a child reaches

-10-

19, but it would be impossible for the trial court to enter such an order because the child's age automatically terminates the proceedings and closes the case. Since the phrase "no order may be made terminating parental rights" cannot be modified by the second exception added by the 1993 amendment, then that phrase also cannot be modified by "unless it is found to be in his or her best interest by the court."

Lastly, support for our interpretation comes from the procedural requirements of the Act. It would be unreasonable to apply the qualifying phrase "unless it is found to be in his or her best interest" to the phrase "no order may be made terminating parental rights" because a court may not terminate parental rights without first finding the parent unfit. The termination of parental rights is a two-step process under which the best interests of the child is considered only after a court finds the parent unfit. *In re D.C.*, 209 Ill. 2d at 296; *In re D. F.*, 201 Ill. 2d 476, 494-95 (2002). Accordingly, the phrase "unless it is found to be in his or her best interest" cannot reasonably modify to the phrase "no order may be made terminating parental rights."

Notwithstanding the foregoing, the State argues that we must look to the purpose of the Act, the promotion and protection of a child's best interests, in interpreting subsection (c). To support its argument, the State points to section 1–2(3)(c) of the Act, which provides: "(3) In all procedures under this Act, the following shall apply: *** (c) The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the health, safety, and best interests of the child." 705 ILCS 401/1–2(3)(c) (West 2006).

While it is true that the best interests of children is a paramount concern of the legislature, we note that section 1–2(3)(c) addresses *custody* of children, not the termination of parental rights. Further, the focus of the legislature is not solely on the child. We have recognized that the Act favors natural parents having custody of their children (see *In re Arthur H.*, 212 Ill 2d 441, 467 (2004); see also *In re Custody of Menconi*, 117 Ill. App. 3d 394, 396-97 (1983)), and that parental rights are a basic fundamental interest, which may only be taken away by strict adherence to those constitutionally permissible processes mandated by statute. Here, the legislature has determined that parental rights may not be terminated based upon a finding of dependency under subsection (c). There is nothing in this determination that conflicts with the underlying purpose of the Act to

promote and protect the best interests of children. In light of the clear intent of the amendment as gleaned from the legislative debates, we decline to interpret the statute as urged by the State.

## Conclusion

We conclude that the circuit court erred in terminating Phyllis' parental rights after her children were found dependent under section 2–4(1)(c). Accordingly, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*