THE DEPARTMENT OF TRANSPORTATION, Plaintiff, v. PRITPAL SINGH, Defendant-Appellant (BP Products of North America, Inc., *et al.*, Defendants-Appellees; Unknown Owners, Defendants).

Second District   No. 2—08—0286

Opinion filed July 31, 2009.

John J. Conway, of Sullivan, Hincks & Conway, of Oak Brook, for appellant.

Lisa Madigan, Attorney General, and Richard A. Redmond, James T. Mueller, and Steffanie N. Garrett, all of Holland & Knight LLP, both of Chicago, for appellee Department of Transportation.

Thomas F. Geselbracht, of DLA Piper US LLP, of Chicago, for other appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Pritpal Singh (Singh) appeals from the denial of his motion for apportionment of an award received by BP Products of North America and Amoco Oil Company (BP)[1] upon the condemnation of property that was owned by BP and leased by Singh. We affirm.

## BACKGROUND

The following facts are undisputed. In April 2002, Singh signed a lease and franchise agreement (lease agreement) with BP for the operation of a filling station at the corner of North Avenue and Ran-

---

[1]BP Products of North America, Inc., is successor in interest to Amoco Oil Company.

dall Road in St. Charles. The lease agreement was for the period from July 1, 2002, through June 30, 2005. In December 2003, the Illinois Department of Transportation (IDOT) gave BP 60 days' notice of IDOT's intent to commence formal proceedings for condemnation of a portion of the leased premises. In January 2004, BP sent notice to Singh that it was terminating the lease agreement, "effective (10) days prior to the date of condemnation or date of sale in lieu of condemnation."

On April 9, 2005, IDOT filed a complaint to condemn part of the leased premises. Both BP and Singh were named in the suit, along with others. On June 2, after a quick-take hearing, the trial court awarded $823,000 in preliminary just compensation. On June 3, BP sent Singh a letter declaring the lease agreement terminated as of June 17. On June 22, IDOT deposited $823,000 with the Kane County treasurer and was vested with title to the property.

In September 2005, Singh filed a motion for apportionment under the Petroleum Marketing Practices Act (PMPA) (15 U.S.C. §2801 *et seq.* (2000)), which governs franchise agreements for the sale of motor fuel. Singh claimed that condemnation of the property would result in total cessation of his business. He claimed that he would suffer $320,000 in lost "business goodwill" and argued that, under section 2802(d)(1) of the PMPA (15 U.S.C. §2802(d)(1) (2000)), he was entitled to apportionment in that amount from the compensation received by BP. Section 2802(d)(1) provides that, where a franchise agreement is terminated because of condemnation of the subject premises, "the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will." 15 U.S.C. §2802(d)(1) (2000).

The trial court denied the motion for apportionment. The court held, *inter alia*, that section 2802(d)(1) of the PMPA entitles a franchisee to compensation for loss of business only where the franchisor was itself awarded compensation for loss of business. The court reasoned that the condemnation award in this case could not have properly included compensation for loss of business, because Illinois law generally does not permit a condemnation award to include such compensation. The court further reasoned that, even if the PMPA overrode Illinois law and mandated compensation for loss of business, Singh was not entitled to such compensation in this case because (1) the lease agreement provided that BP was entitled to the full amount of any condemnation award; and (2) the lease agreement allowed BP to terminate the agreement in advance of a condemnation judgment, and BP did so terminate, thereby foreclosing any right Singh might have otherwise had in the condemnation proceeds.

On August 6, 2007, the trial court granted IDOT's motion to dismiss Singh from the case. On March 10, 2008, the court entered a final judgment of condemnation, finding that BP was entitled to $918,000 in compensation. Singh filed his notice of appeal on April 3, 2008.

## ANALYSIS

BP moves to dismiss this appeal for lack of jurisdiction. BP also filed such a motion several months ago, and we denied it. The renewed motion states essentially the same grounds as the prior motion. Indeed, BP notes that it renewed the motion "to preserve the record." We deny the renewed motion as we did the original one. We now turn to the merits.

Singh disputes the various grounds cited by the trial court in denying his motion for apportionment. We address only one such ground here because we find it dispositive of the others. We hold that the trial court accurately construed section 2802(d)(1) of the PMPA as mandating compensation to a franchisee for loss of business only where such an award is permitted under state law. Though Singh does not contest this further point, we also hold that the trial court accurately interpreted Illinois law as not permitting condemnation awards to include compensation for lost business.

Our standard of review is straightforward. The trial court's holding was premised on its construction of the PMPA. The construction of a statute is a question of law subject to *de novo* review. *Haymore v. Orr*, 385 Ill. App. 3d 915, 916 (2008).

■ "The PMPA is intended to protect gas station franchise owners from arbitrary termination or nonrenewal of their franchises with large oil companies and gasoline distributors, and to remedy the disparity in bargaining power between parties to gasoline franchise contracts." *DuFresne's Auto Service, Inc. v. Shell Oil Co.*, 992 F.2d 920, 925 (9th Cir. 1993). "The cornerstone of the PMPA is [section 2802], which precludes franchisors from terminating any franchise or failing to renew any franchise relationship unless notification requirements are met and the termination or nonrenewal is based on specified grounds." *DuFresne's Auto Service*, 992 F.2d at 925.

Section 2802 of the PMPA provides, as relevant here:

"§2802. Franchise relationship

(a) General prohibition against termination or nonrenewal
Except as provided in subsection (b) *** , no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—

(1) terminate any franchise *** prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship \*\*\*.

(b) Precondition and grounds for termination or nonrenewal

(1) Any franchisor may terminate any franchise \*\*\* or may fail to renew any franchise relationship, if—

(A) the notification requirements of section 2804 [(15 U.S.C. §2804)] are met; and

(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3).

(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

\* \* \*

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—[setting forth notice requirements.]

\* \* \*

(c) Definition

As used in this subsection (b)(2)(C) \*\*\* the term 'an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable' includes events such as—

\* \* \*

(5) *condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain*[.]

\* \* \*

(d) Compensation, etc., for franchisee upon condemnation or destruction of marketing premises

In the case of any termination of a franchise \*\*\*, or in the case of any nonrenewal of a franchise relationship \*\*\*—

(1) *if such termination or nonrenewal is based upon an event described in subsection (c)(5) \*\*\*, the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will*[.]'' (Emphasis added.) 15 U.S.C. §2802 (2000).

Singh argues, based on subsection (d)(1), that he is entitled to apportionment equal to the loss of business he incurred from the

condemnation of the "marketing premises." BP disputes the claim, urging that section 2802(d)(1) entitles a franchisee to compensation for lost business opportunity or goodwill only where (1) the governing state law permits condemnation awards to include compensation for lost business, and (2) the condemnation award from which apportionment is sought actually includes compensation for the franchisor's loss of business. BP asserts that, because Illinois law generally does not allow a condemnation award to include compensation for lost business, there was no award upon which Singh could base a claim of apportionment under section 2802(d)(1). In reply, Singh argues that a franchisee's right under section 2802(d)(1) to compensation for lost business is independent (and preemptive) of state law and hence he is entitled to such compensation because he submitted uncontested evidence of his business loss.

There is no Illinois case on point, but all foreign cases that have considered the issue have held that section 2802(d)(1) does not create an independent right of the franchisee to compensation for lost business stemming from condemnation of the marketing premises; rather, the franchisee is entitled to such compensation only where, consistent with state law, the franchisor has itself received an award for lost business. See *Bajwa v. Sunoco, Inc.*, 320 F. Supp. 2d 454, 459 (E.D. Va. 2004); *Mamo v. District of Columbia*, 934 A.2d 376, 385 (D.C. App. 2007); *Jersey City Redevelopment Agency v. Exxon Corp.*, 208 N.J. Super. 53, 58-59, 504 A.2d 1207, 1210 (1986).

In *Bajwa*, a gasoline franchisee, Bajwa, relied on section 2802(d)(1) in seeking apportionment of a condemnation award received by the franchisor, Sunoco. The trial court denied the claim because the applicable state law did not permit condemnation awards to include compensation for loss of business:

> "The PMPA does not entitle Bajwa to compensation. *** The PMPA does not entitle a franchisee to compensation from the owner for his leasehold in the event of a condemnation; the act only requires that 'the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity ***.' [Citation.] Virginia law does not compensate the property owners for loss of business opportunity or good will. [Citation.] The sale price received by Sunoco, therefore, could not have contained compensation for business opportunity or good will. Accordingly, the PMPA does not require that Sunoco share the sale price with Bajwa."
> *Bajwa*, 329 F. Supp. 2d at 459.

The court in *Jersey City* likewise denied an apportionment claim brought by a gasoline franchisee:

"Rodriguez argues that the PMPA requires that a portion of Exxon's award be paid to him for his loss of business opportunity and good will. ***

*** Because fair property value takes into account the use of the property, Rodriguez argues, Exxon's award includes his losses. That is not so. Fair market value is fixed with a view to the use of the property in order properly to measure its value and thus compensate the owners of the fee or a portion thereof. Moreover, PMPA does not *require* an award based on any loss of business opportunity or goodwill. It dictates an apportionment of such compensation only if included in the award. The Congress was aware that state laws varied widely on the subject, as they still do. Annot., 81 A.L.R.3d 198 (1977). There was no intention for PMPA to supersede state law on the subject. See 1978 U.S. Code Cong. And Admin. News, 873, 896-97. *** PMPA does not require augmentation of the condemnation award by loss-of-business damages but rather deals only with allocation where such damages are awarded." (Emphasis added.) *Jersey City*, 208 N.J. Super. at 58, 504 A.2d at 1210.

See also *Mamo*, 934 A.2d at 386 (denying apportionment claim under section 2802(d)(1) because state law on condemnation did not allow recovery for loss of business).

This prevailing, indeed unanimous, interpretation of section 2802(d)(1) seems correct on our own analysis of the statutory text. Initially, we note that the statute does not specify where the "compensation *** received" is to be received from. The text failing us here, we resort to an extrinsic aid, namely the legislative history. See *People v. Hickman*, 163 Ill. 2d 250, 261 (1994) ("where the [statutory] language is ambiguous, it is appropriate to examine the legislative history"). The Senate report on the PMPA states in relevant part:

"If termination or non-renewal is based upon condemnation of the premises, in whole or in part, section [2802(d)(1)] requires that any compensation received by the franchisor based upon good will or loss of business opportunity must be fairly apportioned between the franchisor and the franchisee. *This requirement is not intended to require an apportionment different from that made by a State court in a condemnation proceeding to which the franchisee is a party and in which he receives compensation on such grounds.* In such case, the apportionment of the total award between the franchisor and the franchisee would be presumptively fair. The franchisee may challenge the fairness of such an award through appeal, but not collaterally under this title." (Emphasis added.) S. Rep. No. 95—731, at 38 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 873, 896-97.

The legislative history confirms that "compensation *** received" for purposes of section 2802(d)(1) is compensation received in a condemnation action in state court.

Where Singh and BP are at odds is over the kind of condemnation award to which a franchisee has an apportionment right under section 2802(d)(1). Singh argues that the apportionment right extends to any "compensation" the franchisor receives in state court, provided the franchisee can prove lost business. BP asserts that the franchisee has an apportionment right only to compensation awarded the franchisor for lost business, consistent with state law.

Singh makes a textual argument that invokes the "last antecedent" rule. This canon of statutory interpretation holds that "relative or qualifying words, phrases, or clauses are applied to the words or phrases or clauses immediately preceding them and are not construed as extending to or including other words, phrases, or clauses more remote, unless the intent of the legislature, as disclosed by the context and the reading of the entire statute, requires such an extension or inclusion." *In re E.B.*, 231 Ill. 2d 459, 467 (2008). Singh argues:

> "The qualifying phrase 'if any' refers to the last item in the series that follows, namely, the 'compensation.' It does not modify the more remote phrase in the series, *i.e.*, 'good will.' The trial court effectively construed the statute backwards and read the statute to say that an apportionment was allowed only when there was a finding that a lessee was to be compensated for loss of good will. The statute actually reads that a franchisee (Mr. Singh) receives an apportionment from the franchisor (BP) when there is an award of compensation. ***
>
> Since BP did receive an award of compensation in this matter, the plain language of the statute requires it to apportion that award in part to Mr. Singh. The remaining portion of the statute simply provides for the measurement mechanism by which the amount of such apportionment is to be calculated, *i.e.*, according to the damage to the good will of Mr. Singh's business or to Mr. Singh's loss of business opportunity."

We question the need for the last-antecedent rule at all here. "Where the text of the statute is clear and unambiguous, there is no need to resort to canons of statutory construction such as the last-antecedent rule." *People v. Burke*, 362 Ill. App. 3d 99, 105 (2005). We see no ambiguity in the text that pertains to this particular point. Singh is correct that "if any" modifies "compensation," but he misconceives the consequences of this. "Compensation," it happens, is in turn modified by the phrase "received by the franchisor." There is yet a further modifier in the phrase "based upon any loss of business opportunity or good will." This latter phrase modifies "compensation"

utterly and entirely. That is, the text does not contemplate "compensation" that is not "based upon [the franchisor's] loss of business opportunity or good will." Singh's position, however, depends on that possibility, for in his eyes the franchisee is entitled to make an apportionment claim on whatever compensation the franchisor receives, whether or not "based upon any loss of business opportunity or good will."

We stress that our interpretation does not hinge on reading "if any" as modifying "good will." Singh dismisses such a reading, but he has really set up a straw man. It is inconceivable how "if any" could modify "good will" in any case, because "good will" means nothing in insolation. "Good will" is rather integrated into the modifier "based upon any loss of business opportunity or good will."

In actuality, though Singh claims that the meaning of section 2802(d)(1) turns on what "if any" is read to modify, the phrase serves more as a reinforcement than a crucial modifier. Without it, the right of apportionment would still extend only to "compensation *** *received* by the franchisor based upon any loss of business opportunity or good will." Thus, the franchisee would still be limited to what "compensation" the franchisor actually was awarded, and, of that, only what was "based upon any loss of business opportunity or good will." We recognize that "[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless" (*Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994)), but under our interpretation "if any" is an emphasis rather than a superfluity. Singh, we conclude, has not identified any ambiguity in the relevant language, and therefore we have no need to resort to a canon of interpretation.

Singh also argues that, if we read section 2802(d)(1) as conditioning the right of apportionment on whether state law permits condemnation awards to include compensation for lost business, we render the provision "mere surplusage"—"nothing more than a restatement of state law with no independent meaning." Even on our reading, section 2802(d)(1) has force of its own. Section 2802(d)(1) does not simply confirm whatever rights a franchisee has under state law to compensation for lost business. Rather, the provision authorizes the franchisee to exercise those rights against the franchisor's own compensation for lost business. That is, the right of apportionment applies against "compensation, if any, *received by the franchisor* based upon any loss of business opportunity or good will." (Emphasis added.) 15 U.S.C. §2802(d)(1) (2000). The Senate report, as quoted above, explains that section 2802(d)(1) was "not intended to require an apportionment different from that made by a State court in a condemnation proceeding *to which the franchisee is a party and in which he*

*receives compensation on such grounds.*" (Emphasis added.) S. Rep. No. 95—731, at 38 (1978), *as reprinted in* 1978 U.S.C.C.A.N. at 897. Section 2802(d)(1) was not intended as a means of collaterally attacking an apportionment award made in state court where the franchisee was a party. S. Rep. No. 95—731, at 38 (1978), *as reprinted in* 1978 U.S.C.C.A.N. at 897. By implication, section 2802(d)(1) preserves, presumably against assertion of collateral estoppel or *res judicata*, the franchisee's right to an apportionment in cases where the franchisee was not a party to the state proceeding in which the condemnation award was made. So construed, section 2802(d)(1) is not "mere surplusage."

Singh cites authorities of his own but none help his cause. He claims that *Exxon Corp. v. Burns*, No. 34 83 49 (Conn. Super. January 2, 1991), "ruled that the value of the lessee's rights taken as a result of an eminent domain action are recoverable under the PMPA." This reading is partly correct. *Burns* did hold that the gasoline franchisee in that case was entitled to compensation for the termination of its lease resulting from condemnation of the marketing premises. *Burns*, slip op. at 2. The basis of recovery for the lost leasehold interest was not, however, the PMPA but rather Connecticut law. *Burns*, slip op. at 2. *Burns* distinguished between a lost leasehold and lost business opportunity or goodwill, and held that since compensation for the latter was unavailable under Connecticut law, it could not be the basis of an apportionment claim under section 2802(d)(1) of the PMPA. *Burns*, slip op. at 2.[2] *Burns*, therefore, construed section 2802(d)(1) consistently with the authorities we cited above.

In addition to *Burns*, Singh quotes a handful of boilerplate policy statements about the PMPA. Representative of these is the remark in *Brewer v. Exxon Corp.*, 626 F. Supp. 76, 79 (E.D. Tenn. 1985), that the PMPA "is directed at protecting the buildup of goodwill by those individuals who have invested time and money into the operation of a franchise." Neither *Brewer* nor any of the other cases from which Singh lifts such remarks dealt with the issue at hand, that is, the compensation owed a franchisee from the taking of the marketing premises. The PMPA does, we think, protect a franchisee's goodwill, if not in the way Singh conceives. First, the PMPA protects a franchisee's goodwill by restricting the grounds for termination of a franchise. See *BP West Coast Products LLC v. May*, 347 F. Supp. 2d 898, 903 (D. Nev. 2004) (the purpose of the PMPA is to "protect[ ] a franchisee who has built substantial goodwill in a station *from having his or her franchise*

---

[2]Illinois law, as we note below, similarly distinguishes between a lost leasehold and lost business.

*arbitrarily taken from him or her"* (emphasis added)). Second, as we have noted, the PMPA protects the franchisee's right of apportionment where the franchisee was not a party to the state condemnation proceeding.

█ We have held that section 2802(d)(1) directs us to Illinois law to determine whether Singh has a right to a portion of the condemnation award. So convinced is Singh that Illinois law is irrelevant here that he does not make even an alternative argument as to what manner of compensation Illinois allows in condemnation proceedings. Though the issue is therefore uncontested, we note that, under Illinois condemnation law (like Connecticut's, as described in *Burns*), a lost leasehold is compensable but lost business is, with a narrow exception, not compensable. Compare *Department of Transportation v. Mullen*, 120 Ill. App. 3d 268, 275 (1983) ("The interests compensable in a condemnation action include leaseholds"), with *Department of Public Works & Buildings v. Lambert*, 411 Ill. 183, 194 (1952) ("Profits or supposed profits arising from a business are not competent and are not a proper element of damages [for condemnation] unless the property sought to be taken is designed for, or applied to, such a special use that its market value cannot be ascertained in any other manner"); see also *Forest Preserve District v. Kercher*, 394 Ill. 11, 24 (1946) ("profits from the business could not be taken into consideration [in setting just compensation] because the business itself was not being taken and could be moved and operated elsewhere"); *West Chicago Park Commissioners v. Boal*, 232 Ill. 248, 253 (1908) ("the amount of business transacted in the saloon or the profits of a saloon business, which could be carried on anywhere, was not an element to be considered" in setting just compensation). Notably, Singh did not seek apportionment based on a lost leasehold.

Because we have determined that Singh's claim to compensation for lost business opportunity or goodwill is fundamentally flawed because Illinois law permits no such compensation in condemnation cases, we do not decide whether Singh's claim fails for the subsidiary reasons specified by the trial court.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.