NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251234-U

NO. 4-25-1234

IN THE APPELLATE COURT

FILED
April 10, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* K.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 21JA389 |
| v. | ) | |
| Shaun R., | ) | Honorable |
| Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's order terminating respondent's parental rights, holding that the court's alleged error in allowing the foster parents and counsel for the Illinois Department of Children and Family Services to participate in the proceedings as parties did not render the termination order void, and respondent failed to otherwise demonstrate that the alleged errors amounted to reversible error.

¶ 2    Respondent, Shaun R., the putative father of K.R. (born in 2019), appeals the trial court's order terminating his parental rights to K.R. Respondent argues the order terminating his parental rights must be reversed because the court "exceeded its statutory authority during the proceedings leading to the termination of the respondent's parental rights" by allowing the foster parents of K.R., the foster parents of K.R.'s siblings, and counsel for the Illinois Department of Children and Family Services (DCFS) to participate in the proceedings as parties. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On October 25, 2021, the State filed a neglect petition alleging that K.R. was neglected in that she was in an environment injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2020)) because her siblings were removed from her mother's care and her mother had failed to cure the conditions that caused their removal. At the time the petition was filed, juvenile proceedings concerning four of K.R.'s siblings had already commenced, and the foster parents of some of K.R.'s siblings had been granted intervenor status. On November 29, 2021, the trial court entered an order stating respondent would retain custody and guardianship of K.R.

¶ 5        On February 11, 2022, the trial court entered an adjudicatory order finding that K.R. was neglected. The order stated the parents "waive[d the] dispositional timeframe."

¶ 6        On May 11, 2022, the trial court entered an emergency temporary custody order granting DCFS temporary custody and guardianship of K.R. On June 17, 2022, following a shelter care hearing, the court entered a temporary custody order granting custody and guardianship of K.R. to DCFS.

¶ 7        On November 1, 2022, the trial court entered a dispositional order finding respondent was unfit or unable to care for, protect, train, or discipline K.R., and it was in K.R.'s best interest to remove her from the custody of her parents. The order made K.R. a ward of the court and granted custody and guardianship to DCFS.

¶ 8        On April 12, 2024, the State filed a motion for termination of respondent's parental rights. The motion alleged that respondent was unfit in that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to K.R.'s welfare (750 ILCS 50/1(D)(b) (West 2024)) and (2) failed to make reasonable progress toward K.R.'s return during the nine-month period from July 9, 2023, through April 9, 2024 (*id.* § 1(D)(m)(ii)).

¶ 9        On May 21, 2024, K.R.'s foster parents filed a motion to intervene pursuant to

section 1-5(2)(c) and (d) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-5(2)(c), (d) (West 2024)). (K.R.'s foster parents are not the same individuals as the foster parents for K.R.'s siblings who had previously been granted intervenor status.) The motion alleged that K.R. had been placed with her foster parents since December 2022 and DCFS had given them verbal notice that they were trying to place K.R. with her maternal grandparents. The motion alleged it was in K.R.'s best interest for her foster parents to intervene, given the amount of time she had lived with them and the bond she had formed with them.

¶ 10        At the hearing on K.R.'s foster parents' motion to intervene, the trial court asked the parties if they were objecting to the motion. Counsel for K.R.'s mother stated that K.R.'s mother disagreed with the motion, but she understood that K.R.'s foster parents had a statutory right to intervene because K.R. had lived with them for more than one year and DCFS's intent to remove K.R. was not based on circumstances within the home that jeopardized her health or safety. Respondent's counsel similarly stated: "For the record, [respondent] is not objecting, but *** we obviously disagree with it, but we understand under the [Act] they do have the right to intervene." No other party objected. The court then stated: "Based on the parties' positions, I am going to grant the motion to intervene pursuant to 405 1-5, subsection 2(c)."

¶ 11        On October 9, 2024, a fitness hearing commenced on the State's motion to terminate respondent's parental rights. Motions to terminate the parental rights of respondent and the children's mother to K.R.'s siblings had also been filed and were heard at the same time as the motion to terminate respondent's parental rights to K.R. The trial court heard evidence on the issue of unfitness on several occasions over the course of eight months, until the parties made their closing argument on June 18, 2025. On July 31, 2025, the trial court found respondent was unfit as to both grounds alleged in the State's motion for termination of parental rights.

¶ 12        A best interest hearing commenced on August 15, 2025, and concluded on September 18, 2025. On October 23, 2025, the trial court entered an order terminating respondent's parental rights. The court found respondent was unfit and that termination of his parental rights was in K.R.'s best interest. This appeal followed.

¶ 13                        II. ANALYSIS

¶ 14        On appeal, respondent argues that the trial court's order terminating his parental rights as to K.R. must be reversed because the trial court "exceeded its statutory authority" in the proceedings leading to the termination of his parental rights by (1) allowing the foster parents of K.R. and the foster parents of K.R.'s siblings to be parties to the case and (2) allowing counsel for DCFS to take part in the shelter care hearing held on June 17, 2022, as a party. In support of his argument, respondent cites *In re Vanessa C.*, 316 Ill. App. 3d 475, 479 (2000), for the proposition that "courts exercising jurisdiction over the [Act] must proceed within the strictures of the statute." Respondent further cites *In re E.B.*, 231 Ill. 2d 459, 464 (2008), for the proposition that "[a]ny action the trial court takes that is outside the statute's stricture is void."

¶ 15                        A. Voidness

¶ 16        We first address the question of whether the errors alleged by respondent (*i.e.*, the trial court acting outside the strictures of the Act by improperly allowing the foster parents and counsel for DCFS to participate in the proceedings as parties) are bases for finding the termination order void. For the reasons that follow, we conclude they are not.

¶ 17        "[W]hether a judgment is void or voidable presents a question of jurisdiction." *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. "A voidable judgment *** is an erroneous judgment entered by a court that possesses jurisdiction." *Id.* A void judgment, on the other hand, is entered by a court without jurisdiction. *Id.* Voidness challenges are not subject to forfeiture or

other procedural restraints, and a void judgment may be challenged in perpetuity. *Id.* ¶ 38. Our supreme court "recognizes only two circumstances when a judgment will be deemed void: (1) when the judgment was entered by a court that lacked jurisdiction or (2) when the judgment was based on a statute that is facially unconstitutional and void *ab initio*." *People v. Abdullah*, 2019 IL 123492, ¶ 13. Here, respondent does not argue that the termination order was based on a statute that was facially unconstitutional.

¶ 18        Respondent also has not shown that the trial court lacked jurisdiction when it entered the termination order. Jurisdiction is composed of two elements: subject matter jurisdiction and personal jurisdiction. *In re M.W.*, 232 Ill. 2d 408, 414 (2009). "Subject matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted). *Id.* at 415. "Personal jurisdiction is the court's power to bring a person into its adjudicative process." (Internal quotation marks omitted.) *Id.* The trial court clearly had personal jurisdiction over respondent, as respondent appeared before the court and participated in the termination proceedings. See *id.* at 426 ("A respondent or defendant may consent to personal jurisdiction by his appearance, or he may have personal jurisdiction imposed upon him by effective service of summons.").

¶ 19        The trial court also had subject matter jurisdiction over the termination proceeding. Article 6, section 9 of the Illinois Constitution provides:

> "Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9.

Thus, "[w]ith the exception of the circuit court's power to review administrative action ***, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).

¶ 20　　　　"[W]hile the legislature can create new justiciable matters by enacting legislation that creates rights and duties, the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction." (Internal quotation marks omitted.) *People v. Castleberry*, 2015 IL 116916, ¶ 15. "Error or irregularity in the proceeding, while it may require reversal of the court's judgment on appeal, does not oust subject matter jurisdiction once it is acquired." *M.W.*, 232 Ill. 2d at 423.

¶ 21　　　　Here, the State's motion to terminate respondent's parental rights alleged the existence of a justiciable matter over which the trial court had original jurisdiction pursuant to the Illinois Constitution. See *In re R.H.*, 2024 IL App (4th) 241048, ¶ 25. Even if we were to accept respondent's arguments that the trial court failed to comply with the statutory requirements of the Act by allowing the foster parents and counsel for DCFS to participate in the proceedings as parties, which we do not, such an error would not divest the trial court of subject matter jurisdiction. See *M.W.*, 232 Ill. 2d at 423; see also *In re G.F.H.*, 315 Ill. App. 3d 711, 716 (2000) ("That a court acts beyond its statutory *authority* in a particular case does not mean that the court lacks *jurisdiction* over the type of proceeding involved." (Emphases in original.)).

¶ 22　　　　In reaching our holding, we acknowledge that, as respondent cites in his brief, our supreme court stated in *E.B.* that any action a trial court takes that is outside the strictures of the Act is "void." *E.B.*, 231 Ill. 2d at 464. We note that while the *E.B.* court affirmed the appellate court's reversal of the trial court's termination order, it did not expressly address the issue of

- 6 -

whether the termination order was void or merely voidable, nor was the trial court's subject matter jurisdiction at issue in that case. See *id.* at 463-73. Moreover, in *Belleville Toyota*, our supreme court extensively discussed the body of case law holding that, in cases involving "purely statutory causes of action," a circuit court lacks jurisdiction to grant the relief requested unless the statutory requirements are satisfied. *Belleville Toyota*, 199 Ill. 2d at 336-37. The court held that, after the Illinois Constitution was amended in 1964, such case law was no longer relevant outside the context of administrative review. See *id.* at 335-41.

¶ 23     Thus, we conclude that because respondent has not shown that the termination order was based on a facially unconstitutional statute or entered by a court without jurisdiction, the termination order is not void. At most, the order is voidable if respondent can demonstrate that reversible error occurred. For the reasons that follow, we find that he cannot.

¶ 24     B. Granting Party Status to the Foster Parents

¶ 25     We next address respondent's challenges to the trial court's decision to grant party status to both the foster parents of K.R. and the foster parents of some of K.R.'s siblings. We note that the State argues that respondent challenged only the intervenor status of the foster parents of K.R.'s siblings in his initial brief, while respondent contends he also challenged the court granting party status to K.R.'s foster parents. While respondent's argument in his initial brief lacks clarity on this point, we will address his argument that the court erred in granting party status to both sets of foster parents.

¶ 26     1. *Foster Parents of K.R.'s Siblings*

¶ 27     Respondent argues that the termination order must be reversed because the trial court acted outside the strictures of the Act by granting party status to the foster parents of K.R.'s siblings. Initially, we question respondent's standing to challenge the intervenor status of the

foster parents of K.R.'s siblings, as only the termination of respondent's parental rights to K.R. is at issue in this appeal.

¶ 28    In any event, the record is not sufficiently developed to address this claim. "The burden is on the appellant to provide a sufficiently complete record on appeal, and in the absence of such a record, it will be presumed that the trial court's orders had a sufficient factual basis and were in conformity with the law." *In re M.H.*, 2025 IL App (4th) 250271, ¶ 27. "Any doubts arising from the incompleteness of the record will be construed against the appellant." *Id.*

¶ 29    The foster parents of K.R.'s siblings were granted intervenor status before the State filed the neglect petition concerning K.R., and any hearings or orders concerning their motion to intervene are not part of the record on appeal. Thus, the record does not disclose the court's basis for granting intervenor status to the foster parents of K.R.'s siblings. Accordingly, we will presume that the trial court's order allowing them to intervene was in conformity with the law. See *id.*

¶ 30                          *2. K.R.'s Foster Parents*

¶ 31    Respondent also argues that the trial court erred by granting party status to K.R.'s foster parents. We find that any error with regard to the trial court granting intervenor status to K.R.'s foster parents was invited by respondent.

¶ 32    The rule of invited error "prohibits a party from requesting to proceed in one manner and then contending on appeal that the requested action was error." *Gaffney v. Board of Trustees of Orland Fire Protection District*, 2012 IL 110012, ¶ 33. "The rationale for the rule is that it would be manifestly unfair to grant a party relief based on error introduced into the proceedings by that party." *Id.*

¶ 33    At the hearing on K.R.'s foster parents' motion to intervene, respondent's counsel

indicated that, although respondent "disagree[d] with it," respondent was not objecting to the motion because K.R.'s foster parents had a right to intervene under the Act. Based on respondent's position and the positions of the other parties, the trial court granted K.R.'s foster parents' motion to intervene under section 1-5(2)(c) of the Act (705 ILCS 405/1-5(2)(c) (West 2024)). Under these circumstances, it would be fundamentally unfair to reverse the trial court's termination order based on its decision to allow K.R.'s foster parents to intervene. This is especially true in the instant case, where respondent has made no attempt to demonstrate that he suffered any prejudice or that the termination proceedings were affected in any substantive way by the participation of K.R.'s foster parents.

¶ 34 We reject respondent's argument in his reply brief that his agreement to K.R.'s foster parents having intervenor status was not an agreement to the court granting them "party status." Respondent cites no authority supporting the proposition that "intervenor status" is somehow different or distinct from "party status." This court has previously equated "party status" and "intervenor status" when discussing section 1-5(2)(c) of the Act. See *In re Cal. E.*, 2023 IL App (4th) 220930, ¶ 112 ("[Section 1-5(2)(c) of the Act] *** confers party status in some circumstances upon foster parents who have cared for a minor for over one year."). We also note that section 2-408(f) of the Code of Civil Procedure (735 ILCS 5/2-408(f) (West 2024)) provides that "[a]n intervenor shall have all the rights of an original party," subject to certain enumerated limitations that may be imposed by the trial court. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 54 ("Termination proceedings under the Act employ the general rules of civil practice and the provisions of the Code of Civil Procedure unless the Act specifically governs the procedure at issue.").

¶ 35 C. Counsel for DCFS

¶ 36    Respondent also argues that the trial court improperly permitted counsel for DCFS to participate in the shelter care hearing held on June 17, 2022, as a "second prosecutor," which respondent contends was an act beyond the court's statutory authority pursuant to sections 1-5(2)(a) and 1-6 of the Act (705 ILCS 405/705/1-5(2)(a), 1-6 (West 2022)). Respondent makes no substantive argument concerning the involvement of DCFS's counsel in any subsequent hearing, including the hearings on the State's motion to terminate respondent's parental rights.

¶ 37    Initially, we note that the shelter care hearing occurred prior to the entry of the dispositional order and respondent could have attempted to raise this alleged error by appealing the dispositional order, but he failed to do so. See *In re Leona W.*, 228 Ill. 2d 439, 456 (2008) ("Appealing a dispositional order is the proper vehicle for challenging a finding of abuse or neglect."). Accordingly, we lack appellate jurisdiction to consider this issue. *Id.* at 457.

¶ 38    Even if we somehow had the authority to review respondent's argument that DCFS's counsel's participation in the shelter care hearing was not authorized by the Act, we have already rejected respondent's claim that the trial court's alleged failure to comply with a statutory requirement could render the termination order void. *Supra* ¶¶ 16-23. Respondent has provided no argument and cited no authority demonstrating how the participation of counsel for DCFS in the shelter care hearing would otherwise require reversal of the subsequent termination order. See *Thomas v. Thomas*, 2024 IL App (4th) 240289-U, ¶ 25 ("Without legal authority, respondent's argument is unconvincing and he has not met his burden on appeal.").

¶ 39    III. CONCLUSION

¶ 40    For the reasons stated, we affirm the trial court's judgment.

¶ 41    Affirmed.