2026 IL App (1st) 241045-U

SECOND DIVISION
March 31, 2026

Nos. 1-24-1045, 1-25-0235 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| CAPITOL CEMENT COMPANY, INC., an Illinois Corporation, | ) Appeal from the Circuit Court of ) Cook County. |
| Plaintiff-Appellant, | ) |
| v. | ) No. 2019 CH 07434 |
| CITY OF HARVEY, H&H ELECTRIC CO., and ILLINOIS DEPARTMENT OF TRANSPORTATION, | ) Honorable ) Neil H. Cohen, ) Judge, presiding. |
| Defendants-Appellees. | ) |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice Ellis concurred in the judgment.
Presiding Justice Van Tine specially concurred.

**ORDER**

¶ 1    *Held*:   The circuit court's dismissal of plaintiff's unjust enrichment claim was premature, but its grant of summary judgment on the breach of contract claim was appropriate. We affirm in part and reverse in part.

¶ 2    In 2010, the City of Harvey, Illinois (defendant) passed the first of several resolutions authorizing a project to improve a stretch of 167th Street in Harvey. Capitol Cement Company, Inc. (plaintiff) won the contract to perform the project work. The project was

funded by a combination of defendant's own funds and grant funds provided by the State of Illinois and Cook County. Within months of plaintiff starting work, when the project was approximately 75% complete, defendant instructed plaintiff to stop work because it no longer had funds to pay plaintiff for its work because one of the necessary grants was withdrawn by the State. Plaintiff sued on a number of grounds, including breach of contract and, in the alternative, unjust enrichment. Plaintiff stated in its complaint that the Illinois Department of Transportation (IDOT) and H&H Electric Company were named as defendants only as necessary parties, and seeks no relief against them. The circuit court dismissed the unjust enrichment claim and awarded defendant summary judgment on the breach of contract claim. Plaintiff appeals.

¶ 3                                    I. BACKGROUND

¶ 4        On October 25, 2010, defendant passed Resolution 2564, which authorized Robinson Engineering (Robinson) to perform a study and produce a design for what it called "the 167th Street expansion project." Defendant subsequently passed Resolution 2622 in 2012, committing $250,000 in "general obligation funds or motor fuel tax funds" to be spent on the project in conjunction with anticipated funds from a "CDBG-IKE Disaster Recovery Program grant." Defendant passed Resolution 2702 in 2013, allowing defendant to borrow $105,173.97 from "the appropriate TIF"[1] for the project, to be reimbursed from Illinois Disaster Recovery Grant funds. Resolution 2702 also noted that defendant had received Illinois Disaster Recovery Grant funds amounting to $2,650,000.00, though no language in the resolution commits those grant funds to the 167th Street project.

---

[1] Although the resolution does not specify the meaning of "TIF," we understand it to refer to tax increment financing funds, the details of which are not germane to this appeal.

¶ 5        On October 9, 2014, Robinson sent a letter to defendant's mayor describing the physical details of the project and the anticipated funding sources. The project was to be paid for "utilizing a DCEO and EDP funding,"[2] and was to reconstruct and improve "167th Street from Center Street to Lowe Avenue with an omission at Halsted Street." In the letter, Robinson noted plaintiff's bid of $4,969,883.46 as the lowest bid received for the project and recommended that defendant award the contract to plaintiff. On October 13, 2014, defendant took Robinson's advice and signed a contract with plaintiff accepting its bid in exchange for the roadwork. The contract did not detail the breakdown of funding sources and instead only referred to the total sum to be paid to plaintiff: $4,969,883.46. The Contract dictated that 10% of its value would be withheld by defendant until final payment on the project.

¶ 6        On January 21, 2015, a document labeled "Intergovernmental Agreement" (IGA) was signed by representatives of Cook County, the State of Illinois, and defendant. That agreement describes defendant as making "efforts to apply for and procure state funding for [the 167th Street project]" and notes that "without said funding the Project could not be completed." Section 3 of the IGA detailed the funding sources for the project, and attached to the agreement as an exhibit was the following "Funding Breakdown" table:

---

[2] These acronyms are again undefined. DCEO undoubtedly refers to the Illinois Department of Commerce & Economic Opportunity, which is responsible for dispersing funds from the 2008 Community Development Block Grand Disaster Recovery Program, also known as the CDBG-IKE. 2008 Community Development Block Grant Disaster Recovery (CDBG-DR) Program (DR-1800 IKE), Illinois Department of Commerce & Economic Opportunity, https://dceo.illinois.gov/communityservices/disasterrecovery/ikedisasterrecovery.html (last visited March 12, 2026). EDP refers to the Economic Development Program grant offered by the Illinois Department of Transportation for expanding access to "new or expanding industrial, manufacturing or distribution type companies." Economic Development Program, Illinois Department of Transportation, https://idot.illinois.gov/programs-and-projects/grants/economic-development-program.html (last visited March 12, 2026).

| ITEM | TOTAL ESTIMATED COST | *Requested DCEO Budget Amount Funds | IDOT EDP Funding | COUNTY SHARE | CITY SHARE |
|---|---|---|---|---|---|
| PhaseII Design Engineering | $380,000.00 | $30,000.00 | $100,000.00 | $0 | $250,000.00 |
| Right-of-Way | $200,000.00 | $200,000.00 | $0 | $0 | ($200,000.00 Paid by City) |
| Construction Engineering | $300,000.00 | $0 | $300,000 | $0 | $0 |
| Construction | $4,770,000.00 | $2,270,000.00 | $1,600,000.00 | $900,000.00 | $0 |
| TOTAL | $5,650,000.00 | $2,500,000.00 | $2,000,000.00 | $900,000.00 | $250,000.00 |

*Requested DCEO Grant Budget Amount $2,500,000.00 shall reimburse the COUNTY.

¶ 7    Per the IGA, whatever monies were used from the DCEO Budget Amount Funds, to a maximum budget of $2,500,000.00 would be used to reimburse Cook County. The County's estimated cost beyond the $2,500,000.00, to be reimbursed by DCEO funds was $900,000.00. Defendant's costs beyond DCEO and EDP funds were anticipated to be $250,000.00.

¶ 8    At his deposition, plaintiff's president, Massoud "Mike" Farshchi (Farshchi), testified that plaintiff began work on the project sometime during the spring of 2015. Plaintiff was able to complete an estimated 75% of the project before Robinson instructed it to stop work because funds were not available to continue paying plaintiff. Farshchi averred separately that the damages to plaintiff amounted to $904,618.40, of which $248,494.17 was the retention withheld by defendant, $552,000.000 was various costs incurred by the project (including attorney fees), and $104,124.23 was the cost of traffic signal maintenance, usage, and repairs.

¶ 9    On June 22, 2015, the DCEO director sent a letter to Cook County to inform it that the appropriation that provided for the $2,500,000.00 DCEO grant had not been reappropriated

in any current capital bill, therefore the grant was being suspended effective June 30, 2015, and Cook County was obligated to cease any spending of grant funds on or before that date. The letter stated that "to the extent Cook County already has obligated grant funds, the terms of the Agreement require Cook County to use all efforts to cancel those obligations." Cook County was required to submit "a financial expense report *** detailing all grantee expenditures and any other obligations which cannot be canceled after June 30, 2015." Robinson provided the letter to plaintiff on June 30, 2015, with a brief letter stating that defendant had received the letter from Cook County the preceding day, and that the project was suspended until further notice. Farshchi testified that $625,478.84 of DCEO grant funds had been provided before the grant was suspended.

¶ 10      Holly Cichy, chief engineer for the Cook County Department of Transportation (CDOT), testified during her deposition that the DCEO grant money that was anticipated to go toward the 167th Street project was no longer available, and that she did not know if any efforts had been made to find other funding sources to secure that shortfall. Cichy confirmed that $820,559.82 out of the allotted $900,000.00 in Cook County motor fuel tax funds had been expended before the project was suspended.

¶ 11      Greg Upton, a project engineer for the Bureau of Local Roads and Streets for IDOT testified at his deposition that the IDOT EDP funding was capped at $2,000,000.00, and of that, $104,000.00 remained available for the 167th Street project.

¶ 12      Louis Williams, defendant's comptroller during the relevant period, was also deposed. He testified that defendant did not have the financial assets to complete the project without grant assistance. Williams was unaware of any payments from defendant to plaintiff aside from a previous lawsuit concerning the same contract that was settled and resulted in a payment

from defendant to plaintiff. During the time the project was still underway, plaintiff would submit invoices to Robinson, who would forward them to the County and State to have them provide funds for a percentage of that expense according to the IGA. The County and State would remit checks to Robinson, which would then pay plaintiff.

¶ 13                                    A. Motion to Dismiss

¶ 14        Plaintiff's first amended complaint, filed September 13, 2019, enumerated seven counts against defendant. Relevant to this appeal are Count IV seeking damages under a theory of breach of contract and Count V, seeking damages under the alternative theory of unjust enrichment. The first 38 paragraphs of the complaint lay out the factual allegations upon which the counts are based, and each count restates those paragraphs, including paragraphs 15 and 16, which describe plaintiff signing a contract with defendant, as well as the amount to be paid to plaintiff upon completion of the project.

¶ 15        In Count IV, plaintiff alleged that while it continued to perform its duties pursuant to the contract, defendant breached the contract by failing to pay plaintiff and failing to return to plaintiff the $248,494.17 defendant had retained under the contract.

¶ 16        In Count V, plaintiff again restated the first 38 paragraphs, including those stating that it had signed a contract with defendant. Plaintiff described the same damages and stated again that it continued to perform its "obligations under the Contract," but asserted that defendant was unjustly enriched when it retained the benefit of plaintiff's services without paying plaintiff for those services.

¶ 17        On January 1, 2020, defendant moved to dismiss the amended complaint in a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2018). Defendant argued that both Count IV and Count V were barred by *res judicata*

because there was a previous action by plaintiff against defendant that was fully resolved and resulted in a $2,016,130.96 default judgment against defendant, and that all claims for "prior work, the recovery of costs for any other reason, which arose prior to September 23, 2016, are *** barred under the doctrine of *res judicata*."

¶ 18    On June 15, 2020, the circuit court entered an order dismissing plaintiff's unjust enrichment claim with prejudice. The circuit court stated: "Illinois law is well established that there can be no recovery in *quantum meruit* or for unjust enrichment where an express contract exists. [Citations.] Since such a contract exists, Count V fails to state a claim for unjust enrichment." The motion declined to dismiss plaintiff's breach of contract claim, noting that defendant's argument was inappropriate, because it challenged the legal sufficiency of plaintiff's claim, but a section 2-619 motion necessarily admits the legal sufficiency of the complaint.

¶ 19                    B. Plaintiff's Motion for Summary Judgment

¶ 20    On August 25, 2023, plaintiff filed its third amended complaint. Count I asked that the court declare that plaintiff be relieved from performance due to impossibility and impracticability. The complaint also alleged two different counts of breach of contract. Count III alleged that defendant was not upholding its obligations to pay plaintiff under the contract. Count IV, made the same allegations, but asked that the court order specific performance.

¶ 21    Plaintiff filed a motion for summary judgment on November 17, 2023. For Count III, plaintiff argued that there was no dispute that a contract existed, that plaintiff performed on the contract, that defendant breached the contract, and that plaintiff was injured as a result. For Count IV, plaintiff argued that there was no genuine issue of material fact as to the

existence of the contract, plaintiff's compliance with the contract, or defendant's "failure or refusal" to perform its part of the contract. Plaintiff additionally requested that the court declare the contract rescinded due to impossibility, impracticability, or frustration of purpose, as the non-completion of the project was causing plaintiff to accrue continuing expenses and there was no sign that defendant had either the ability or the intention to devote the funds necessary to complete the project.

¶ 22     Defendant filed its own motion for summary judgment on the same day as plaintiff's. In it, defendant argued that section 8-1-7 of the Illinois Municipal Code (65 ILCS 5/8-1-7) rendered null and void any contract made or expense incurred without prior appropriation, and only $250,000 was appropriated by defendant for this project. Defendant also argued that plaintiff had other remedies that could be pursued with IDOT regarding plaintiff's continuing obligation to repair and maintain temporary traffic signals in the project zone. Defendant repeated these same arguments in its response to plaintiff's motion for summary judgment.

¶ 23     Plaintiff filed a response to defendant's motion for summary judgment on March 22, 2024. In it, plaintiff argued that defendant complied with section 8-1-7 when the mayor and city council passed an ordinance appropriating its $250,000 self-funding obligation and funded the rest of the anticipated $4,900,000 cost of the project through state grants. Plaintiff also argued that defendant was equitably and judicially estopped from denying the existence of a valid and enforceable contract, and that the possibility of pursuing relief from IDOT did not preclude recovery from defendant.

¶ 24     On April 15, 2024, the circuit court entered an order granting partial summary judgment to both parties. The court found plaintiff's arguments on estoppel unconvincing. The court awarded summary judgment on counts III and IV to defendant, stating: "[plaintiff] has not

identified any resolution approved by the City Council providing funding for the Project other than the $250,000 appropriation. To the extent that Harvey is obligated to pay any additional amount from its own funds, the Contract is null and void for lack of proper appropriation of such funds. 65 ILCS 5/8-1-7."

¶ 25    The circuit court granted summary judgment to plaintiff on Count I of the third amended complaint. The court deemed performance impossible and rescinded the contract, freeing plaintiff from its obligation to continue maintaining the temporary traffic signals that had been their responsibility for approximately nine years. The court stated that "[i]t cannot reasonably be disputed that performance under the Contract has been rendered impossible." The court further opined that "[w]hile [plaintiff] could certainly have foreseen financial difficulties impacting performance of the Contract, there is no indication that [plaintiff] could have foreseen that the grants intended to finance the Project would evaporate within months of the beginning of the construction." The court expanded on its decision to state specifically that "given the recission of the Contract, [plaintiff] has no further obligation to maintain the temporary traffic signals and control of the traffic signals reverts back to IDOT."

¶ 26    Plaintiff timely appealed the circuit court's decision to grant summary judgment to defendant on the breach of contract counts and the court's dismissal of plaintiff's unjust enrichment claim. Plaintiff later appealed a pair of subsequent orders related to returning control of the temporary traffic signals to IDOT's supervision and that appeal was consolidated into this one.

¶ 27                                    II. ANALYSIS

¶ 28    In the time since plaintiff initiated its appeals, it has chosen not to pursue the issue of the traffic signals, as well as the circuit court's grant of summary judgment to defendant on the

breach of contract count that requested specific performance. The only issues before this court are whether (1) the circuit court erred by dismissing plaintiff's unjust enrichment claim and (2) whether it erred by awarding summary judgment to defendant on the breach of contract claim that sought monetary damages.

¶ 29                                   A. Unjust Enrichment

¶ 30       Plaintiff argues that the circuit court erred in dismissing its unjust enrichment claim because (1) it was properly pleaded in the alternative to the breach of contract claim, and (2) the factual determination that an express contract existed was prematurely made at the motion to dismiss stage.

¶ 31       A section 2-619.1 motion to dismiss "allows defendants to combine a section 2-615 motion to dismiss [citation] with a section 2-619 motion to dismiss." *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39; 735 ILCS 5/2-619.1 (West 2018). Section 2-619.1 motions were introduced as a way to formalize the informal practice of filing 2-615 and 2-619 motions together, while simultaneously requiring that litigants make clear which claims should be dismissed under which section. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 20. The portions devoted to dismissals under section 2-615 and those under section 2-619 must be clearly separated into different parts, and the basis for dismissal for each claim must be laid out. 735 ILCS 5/2-619.1 (West 2018). Since defendant sought dismissal of the unjust enrichment claim under section 2-615, the relevant motion is no different than if it was filed as a standalone section 2-615 motion and all of the same caselaw applies. *Reynolds*, 2013 IL App (4th) 120139, ¶ 20 (gathering cases demonstrating that section 2-619.1 does not authorize hybrid motion practice, but only allows the motions ot be filed together in a single document).

¶ 32     "Pursuant to section 2-615 of the Code, the movant challenges the legal sufficiency of a complaint based on certain defects or defenses apparent on the face of the complaint." *Walworth Investments-LG, LLC*, 2022 IL 127177, ¶ 39. "In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the complaint's allegations—construed in the light most favorable to the plaintiff—are sufficient to establish a cause of action upon which relief may be granted." *Id*. "We review *de novo* an appeal from the dismissal of a complaint pursuant to section 2-615 and 2-619 of the Code." *Id*. ¶ 40.

¶ 33     "To state a claim for unjust enrichment, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the principles of justice, equity, and good conscience.' " *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989)). "This theory is inapplicable where an express contract, oral or written, governs the parties' relationship." *Id*. Though "a plaintiff may plead claims alternatively based on express contract and an unjust enrichment, the unjust enrichment claim cannot include allegations of an express contract." *Id*.

¶ 34     The section of the circuit court's dismissal order devoted to plaintiff's unjust enrichment claim consists of three sentences. The first states the law, that a litigant cannot recover under a theory of unjust enrichment where an express contract exists. The second and third read: "Since an express contract exists, Count V fails to state a claim for unjust enrichment. Count V is dismissed pursuant to 735 ILCS 5/2-615 with prejudice." As written, this is unambiguously a premature factual finding. Although plaintiff's breach of contract claims allege the existence of an express contract and even though neither party contested that a

contract was signed, such a factual finding is premature at the motion to dismiss stage. *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 316 (1991) ("Determining the factual merits of a pleading instead of its legal sufficiency on a 2-615 motion to dismiss is error."). Plaintiff effectively articulates in its brief the sort of "Catch-22" that can result when a court makes even so seemingly obvious a factual finding at an early stage, only for the case's progression to contradict that factual finding. Given the clear black-letter law that such factual determinations are inappropriate for a section 2-615 motion to dismiss, the circuit court erred in dismissing the claim on that basis. *Hulsh v. Hulsh*, 2025 IL 130931, ¶ 13 (On review of a section 2-615 motion to dismiss, the question is whether the factual allegations are sufficient to establish a cause of action, and a cause of action "should not be dismissed *** unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery.")

¶ 35         We note additionally that plaintiff's unjust enrichment claim, as presented in its amended complaint, was fatally flawed in that it indiscriminately incorporated by reference the same set of factual allegations included with every other count. That set of factual allegations included the allegation that an express contract existed. This error may have gone entirely unnoticed, as neither party has highlighted it, nor did the circuit court make mention of it in the dismissal order. For the sake of completeness, we will note that if the circuit court was aware of the error and that error was the basis of its dismissal, it should have allowed plaintiff its requested opportunity to replead the claim. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14-15 (Dismissal with prejudice is only appropriate where "no set of facts can be proven which would entitle the plaintiff to the relief sought" and where an amendment would not cure the defective pleading.).

¶ 36    Regardless of whether the circuit court's error was making a factual determination at the motion to dismiss stage or depriving plaintiff of the opportunity to replead a claim that was facially valid aside from a small error, the result and the remedy are the same. The circuit court erred. We reverse the dismissal and remand for further proceedings on the unjust enrichment claim.

¶ 37                                    B. Summary Judgment

¶ 38    Plaintiff argues that the circuit court erred by granting summary judgment to defendant on its breach of contract claim because (1) all of the necessary elements of a breach of contract claim were satisfied, (2) the circuit court's decision was based on a misreading of the relevant statutes, and (3) defendant should be equitably and judicially estopped from denying the existence of a valid contract.

¶ 39    "Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31; 735 ILCS 5/2-1005(c) (West 2022). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from undisputed facts." *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009). "Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordinary diligence in reviewing the record so as not to preempt a party's right to fully present the factual basis for its claim." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). "In

appeals from summary judgment rulings, the standard of review is de novo." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15.

¶ 40        Plaintiff's first two arguments are really a single argument—that a valid claim supported by the facts existed, yet summary judgment was awarded to defendant—and so we address them together. "To succeed on a breach of contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. Here, there is no question as to the last three elements: plaintiff completed 75% of the project before work was halted by defendant for lack of funds, defendant did breach the contract by failing to pay plaintiff, and plaintiff suffered damages as a result. Similarly, neither party contests the fact that a contract between the parties was signed; the question before us is whether that contract was valid and enforceable.

¶ 41        Section 8-1-7(a) of the Illinois Municipal Code reads:

> "Except as provided otherwise in this Section, no contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof. ***" 65 ILCS 5/8-1-7 (West 2012).

14

¶ 42 Plaintiff makes much of the disjunctive "or" contained in the statutory language "contract or expense." *Id*. Plaintiff cites to our supreme court's *In re E.B.* decision to support the assertion that "a clause *following* a disjunctive is considered inapplicable to the subject matter of the *preceding* clause." (Emphasis in original.) *In re E.B.*, 231 Ill. 2d 459, 468 (2008). This citation is inapposite, as it concerns a *clause* following a disjunctive, specifically the language: "no order may be made terminating parental rights, *nor* may a minor be removed from the custody of his or her parents longer than 6 months, pursuant to an adjudication as a dependent minor under this subsection (c), *unless it is found to be in his or her best interest by the court*." (Emphasis added.) *Id*. at 464. No such clause exists here.

¶ 43 Plaintiff also cites *Janas* to assert that "[s]imply put, or means or, and this disjunctive connotes alternatives." (Internal quotation marks omitted.) *People v. Janas*, 389 Ill. App. 3d 426, 429 (2009). Plaintiff is correct insofar as it asserts that "or" is disjunctive, but that fact changes nothing about the applicability of the statute to this circumstance. The statute requires an appropriation be made before a contract is formed and before an expense is incurred. However, to read the statute to require an appropriation of funds for a contract that does not impose a cost on the municipality produces an absurd result. "[S]tatutes must be construed to avoid absurd results." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. We therefore read it to mean that *to the extent that a contract burdens the city (and thereby the taxpayer) with a monetary obligation*, a prior appropriation must be made. Therefore, distinguishing contracts from expenses does nothing to help plaintiff's claim.

¶ 44 Our interpretation is bolstered by the relevant caselaw regarding the other part of plaintiff's argument: Plaintiff asserts that the plain meaning of "an appropriation" allows for a partial appropriation, in this case the $250,000 appropriated in Resolution 2564, to validate

an entire contract for any amount. Plaintiff cites no caselaw to support this position and instead asserts that by interpreting the statute to require an appropriation for the complete amount, the circuit court was impermissibly adding text to the statute that was not present. We disagree, as this court has previously held that "[s]ection 8–1–7 has been consistently construed to render null and void any contract made by a city without *full* prior appropriation by the city council." (Emphasis added.) *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146, 152-53 (1995).

¶ 45       Plaintiff ends its argument on this point by beseeching the court to "at least find a question of fact existed on whether the City's procurement of outside funds from Illinois' DCEO program and from IDOT's EDP fund constituted an appropriation of funds for the Project." We decline to make the requested finding because the question presented is one of law, not of fact. The question is what is encompassed within the word "appropriation" as used by section 8–1–7.

¶ 46       Black's Law Dictionary includes the following pertinent definition for "appropriation:" "A legislative body's or business's act of setting aside a sum of money for a specific purpose." Black's Law Dictionary (12th ed. 2024). The resolutions cited by plaintiff show no such action on the city's part with regard to the grant funds. Resolution 2564 includes the following language: "WHEREAS, the City of Harvey, Cook County, Illinois has received approximately 1.6 million dollars from the State of Illinois to make substantial improvements to 167th St." That language does not set aside the money or commit it to any purpose, but only states the existence of the money as a fact providing context to the actual action of the resolution, which was to hire Robinson Engineering to take charge of the project. Resolution 2702 similarly contains a "whereas" statement that "the City of Harvey is the recipient of

Illinois Disaster Recovery Grant funds in the amount of 2.65 Million Dollars," but the action taken in the resolution is to borrow TIF funds to be reimbursed from the grant. Resolution 2622, on the other hand, takes action that allocates money by stating:

> "NOW, THEREFORE, BE IT RESOLVED THAT the City of Harvey *does hereby commit* general obligation funds or motor fuel tax funds (if needed) for use in conjunction with a CDBG-IKE Disaster Recovery Program grant, such funds to equal 5.1% of the estimated total project cost of $4,900,000, or $250,000." (Emphasis added.)

¶ 47  That commitment of funds was the purpose of the resolution, not a "whereas" statement providing factual context for defendant's resolution. It clearly commits a specific amount of money to a specific purpose. It mentions the CDBG-IKE grant and its apparent intention to use that grant for the project, but there is no language similar to the verb "commit" that applies to the grant money in this or any other resolution contained in the record. It would appear that defendant fully intended to use grant money to fund the project, but was just as much taken by surprise by the retraction of State grant funds as plaintiff.

¶ 48  We agree with the circuit court that section 8-1-7 prohibited defendant from forming the contract to the extent it created a financial obligation for the city beyond the committed $250,000. As this court has previously held: "In the absence of an appropriation there was no liability, and if it should be held that there was a liability, the provision which the statute intended for the protection of taxpayers would be nugatory and of no avail." *Beling v. City of East Moline*, 14 Ill. App. 2d 263, 269 (1957); see also *City of Peoria v. Peoria Area Advancement Group, LLC*, 2017 IL App (3d) 160216-U ("The purpose of the prior appropriation rule is to protect the municipal treasury against incurring liabilities that exceed

17

an appropriation or for which no appropriation has been made. The prior appropriation requirement is mandatory and was enacted for the protection of the taxpayer.").

¶ 49       Having found that section 8-1-7 prohibited the contract formation to the extent the contract incurred an obligation on defendant's part beyond $250,000, the estoppel issue is a simple matter. While plaintiff's estoppel argument has further flaws, our court has held that "[a] party contracting with a city is presumed to know whether the city is prohibited from making a contract, and a contract made in violation of section 8–1–7 is void *ab initio* and cannot be enforced by estoppel or ratification." *Ligenza v. Village of Round Lake Beach*, 133 Ill. App. 3d 286, 290-91 (1985). It is reasonable to similarly expect a repeat player like plaintiff to know the risks inherent in grant-reliant projects. As such, the circuit court's grant of summary judgment to defendant was the correct decision.

¶ 50                                    III. CONCLUSION

¶ 51       For the foregoing reasons, we affirm the circuit court's order granting summary judgment to defendant on the breach of contract claim, and we  reverse the circuit court's order dismissing plaintiff's unjust enrichment claim. We remand to the circuit court for further proceedings on the unjust enrichment claim.

¶ 52       Affirmed in part and reversed in part.

¶ 53       Cause remanded.

¶ 54    VAN TINE, P.J., specially concurring.

¶ 55       I agree that we should reverse the circuit court's order dismissing plaintiff's unjust enrichment claim, but for a different reason than the majority. In my view, the circuit court did not make a premature finding of fact. Rather, the court prematurely dismissed the unjust enrichment claim with prejudice because it subsequently held that the parties did not have a

valid contract. Therefore, I would reverse and remand on this basis and write separately to add further analysis under Illinois law.

¶ 56     A court should dismiss a claim with prejudice pursuant to section 2-615 "only where it is clearly apparent that the plaintiffs can prove no set of facts entitling recovery." *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 39. The court views the facts in the light most favorable to the plaintiff and takes all well-pled facts and all reasonable inferences that may be drawn from those facts as true. *Sanaa Hachem & Chicago Title Land Trust Co. v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 22. Further, a plaintiff may plead alternative, and inconsistent, legal theories at the pleading stage. See 735 ILCS 5/2-613(b) (West 2018). The equitable remedy of unjust enrichment may be pled in the alternative to claims for breach of contract, if there are no allegations of an express contract. See *Finn v. Project Resource Solutions, LLC*, 2024 IL App (1st) 221016, ¶ 49 ("the alternative pleading of a breach-of-contract claim along with a quasi-contractual theory like *quantum meruit* is all but routine, even though the claims are mutually exclusive.").

¶ 57     The majority states that the circuit court ruling that "an express contract exists" is "unambiguously a premature factual finding." *Supra* ¶ 34. I disagree, because the court did not make a factual determination that there was an express contract. Rather, the circuit court took the complaint's allegation that the parties had a contract as true, which is required for the section 2-615 analysis. See *Sanaa Hachem*, 2015 IL App (1st) 143188, ¶ 22. The court then held that, as a matter of law, plaintiff failed to raise a legally cognizable claim. However, I agree that the circuit court's dismissal with prejudice was premature.

¶ 58     Here, the circuit court dismissed the unjust enrichment claim with prejudice because "an express contract exists." This is premature, as it subsequently held that "the Contract is null

and void" and also held that plaintiff "is entitled to recission of the Contract", meaning the parties did not have a valid express contract. See *Seiden Law Group, P.C. v. Segal*, 2021 IL App (1st) 200877, ¶ 24 ("Because *** there was not a valid and enforceable agreement between the parties, the court erred by dismissing Seiden Law's *quantum meruit* count with prejudice pursuant to section 2-619 of the Code"). As there is no valid express contract, there is no basis for the prior dismissal of the unjust enrichment claim. However, I agree with the majority that the circuit court should have struck the unjust enrichment claim for alleging that the parties had a contract (*Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 ("the unjust enrichment claim cannot include allegations of an express contract.")), and allowed plaintiff to replead, without those allegations (see *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1003 (2005) (courts should liberally allow amendments to pleadings)).