2022 IL App (1st) 211414-U

No. 1-21-1414

Second Division
September 27, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| MARTINA ENRIQUEZ, individually and on behalf of all similarly situated individuals, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 CH 7340 |
| NAVY PIER, INC., an Illinois corporation, | ) ) | Honorable Cecilia A. Horan |
| Defendant-Appellee. | ) | Judge, presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of plaintiff's complaint under the Biometric Information Privacy Act is affirmed where defendant is exempt from the act as a government contractor.

¶ 2    This appeal arises from the dismissal of a putative class action complaint filed by plaintiff-appellant Martina Enriquez against her employer, defendant-appellee Navy Pier, Inc. (NPI). Enriquez alleged that NPI violated various sections of the Biometric Information Privacy Act (Act)

No. 1-21-1414

(740 ILCS 14/1 *et seq.* (West 2020)) in regard to the collection and dissemination of her fingerprint. The circuit court granted NPI's motion to dismiss the complaint on the grounds that NPI was exempt from the Act as government contractor. Plaintiff now appeals, and we affirm.

¶ 3                                              I. BACKGROUND

¶ 4                                                A. The Act

¶ 5     The Act was enacted in 2008 to "regulat[e] the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information," including fingerprints. 740 ILCS 14/5(g), 14/10 (West 2020). The Act provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric information unless it first (1) informs that person in writing that their biometric information is being collected or stored; (2) informs the person in writing of the specific purpose and length of term for which their biometric information is being collected, stored, or used; and (3) receives a written release from the person. *Id.* § 14/15(b)(1)-(3). Additionally, a private entity may not "disclose, redisclose, or otherwise disseminate" a person's biometric information to a third party without the person's consent. *Id.* § 14/15(d)(1). Finally, the Act requires private entities in possession of biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information[.]" *Id.* § 14/15(a).

¶ 6     Notably, the Act's requirements apply only to private entities. *Id.* § 14/15. Further, section 25(e) explicitly exempts government contractors, providing that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." *Id.* § 14/25(e).

¶ 7                                             B. NPI and the MPEA

¶ 8    NPI is an Illinois not-for-profit corporation that, according to its bylaws,

"operate[s] exclusively for civic and charitable purposes, including (a) supporting, sustaining, investing its funds in and for, and lessening the burdens of government related to the operation of Navy Pier, so as to facilitate the ongoing recreational, educational, cultural and other development of Navy Pier for the benefit of the general public, and all activities incidental or related thereto; (b) maintaining, repairing, operating, designing, financing, subleasing, licensing, developing, redeveloping, and/or demolishing the grounds, buildings, facilities, and/or improvements of, and located on, Navy Pier and Polk Bros Park (f/k/a Gateway Park); and (c) supporting and benefiting the Metropolitan Pier and Exposition Authority (the "MPEA") through the development and operation of Nay Pier."

¶ 9    The crux of this appeal is NPI's relationship with the MPEA, which is the governmental entity that owns Navy Pier. The MPEA was created in 1989 as a "political subdivision, unit of local government ***, body politic and municipal corporation" through the passage of the MPEA Act. 70 ILCS 210/3 (West 2020). That statute requires the MPEA "[t]o carry out or otherwise provide for the recreational, cultural, commercial, or residential development of Navy Pier and to construct, equip, and maintain grounds, buildings, and facilities for those purposes." *Id.* § 4(b).

¶ 10    Upon NPI's creation in 2011, the MPEA transferred operational responsibility for Navy Pier to NPI via a written "Lease Agreement" (Agreement). Under the Agreement, NPI pays the MPEA "annual rent in the amount of one dollar ($1.00)" in exchange for the "exclusive authority to operate and manage" Navy Pier in accordance with a comprehensive "Framework Plan" developed by NPI and the MPEA. The Agreement further provides that NPI "shall perform all duties and obligations with relation to [Navy Pier], including the development and operation

thereof" at its own expense. To fulfill its obligations, the Agreement empowers NPI to, among other things, "hire and employ such personnel as shall, in its judgment, be required to operate, manage, and maintain [Navy Pier] in accordance with the provisions of this Agreement and the Framework Plan, and, in connection therewith, [NPI] shall have sole authority and responsibility to determine the personnel policies and practices of [Navy Pier.]"

¶ 11                                    C. The Complaint

¶ 12     During the times relevant to this appeal, Enriquez was an employee of NPI who was required to clock in and out of shifts via a biometric time clock that scanned her fingerprint. On December 17, 2020, Enriquez filed a complaint on behalf of herself and others similarly situated, alleging that NPI violated the Act by collecting and disseminating its employees' fingerprints without first obtaining their informed consent. Enriquez also claimed that NPI violated the Act by failing to publish "any written policy as to its biometric retention schedule" or "any guidelines for permanently destroying the collected biometrics."

¶ 13                                    D. Motion to Dismiss

¶ 14     NPI filed a motion to dismiss the complaint, arguing that (1) it was exempt from the Act under section 25(e) as a government contractor and (2) the complaint was untimely under the relevant statute of limitations. In response, Enriquez contended that NPI was a lessee of the MPEA, rather than a contractor, and therefore not exempt under section 25(e). Enriquez also asserted that her claims were timely because a new claim accrued each time her fingerprint was scanned without her informed consent.

¶ 15     On October 4, 2021, the circuit court issued a written order granting NPI's motion to dismiss. The court determined that NPI was a contractor because it was contractually obligated to "do work" for the MPEA in the form of operating, maintaining, and developing Navy Pier. As the

MPEA is unquestionably a unit of government, the court therefore ruled that NPI was exempt from the Act as government contractor.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    Here, the circuit court granted NPI's motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). In a section 2-619 motion, the moving party admits the legal sufficiency of the complaint, but asserts that an affirmative defense or other matter defeats the plaintiff's claim. *Van Meter v. Darien Park District*, 207 Ill 2d 359, 367 (2003). We review a circuit court's ruling on a section 2-619 motion *de novo. Id.* at 368. *De novo* review is also appropriate because the resolution of this appeal involves a question of statutory interpretation. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186 ¶ 18.

¶ 19    The primary issue on appeal is whether NPI is exempt from the Act under section 25(e), which, as previously stated, provides that the Act does not apply to "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e) (West 2020). Thus, an entity is exempt under section 25(e) if it is (1) a contractor (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information. To that end, there is no dispute that NPI had a contract with the MPEA or that the MPEA is a unit government. The parties disagree, however, about whether NPI was a "contractor" that was "working for" the MPEA when it collected and disseminated Enriquez's fingerprint.

¶ 20    We first address whether NPI was a "contractor" of the MPEA within the meaning of section 25(e). When construing a statute, a court's primary goal is to ascertain and effectuate the legislature's intent. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17. The best indicator of legislative

intent is generally the language of the statute, given its plain and ordinary meaning. *Id.* Here, the Act itself does not define "contractor," so we must apply its ordinary meaning. Black's Law Dictionary (11th ed. 2019) defines "contractor" as "1. A party to a contract. 2. More specif., one who contracts to do work for or supply goods to another; esp., a person or company that agrees to do work or provide goods for another company."

¶ 21　Enriquez contends that NPI does not satisfy this definition and is instead a lessee of the MPEA, rather than a contractor. She observes that the Agreement itself is styled as a modified net lease and refers to NPI as a "lessee." Enriquez also notes that the MPEA does not pay NPI, and in fact it is NPI who pays the MPEA "rent" in exchange for, among other things, the right to exclude others from the areas of the premises it designates as private.

¶ 22　Even setting aside the fact that Enriquez has cited no authority establishing that an entity cannot be both a lessee and a contractor under the Act, her arguments elevate form over substance. See *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1065 (2005) ("In deciding how to classify a document, we look to its substance not its label."). Although the Agreement bears some characteristics of a net lease, the underlying substance of the Agreement is for NPI to manage, operate, and develop virtually all aspects of Navy Pier on behalf of the MPEA. This is not only clearly a service performed to benefit the MPEA, but also the precise governmental function that the MPEA is statutorily required to effectuate. See 740 ILCS 210/4(b) (West 2020) (requiring the MPEA "[t]o carry out or otherwise provide for the recreational, cultural, commercial, or residential development of Navy Pier and to construct, equip, and maintain grounds, buildings, and facilities for those purposes."). Contrary to Enriquez's characterization, NPI's obligations in this regard are not merely incidental to its possessory interest in the premises and go far beyond the basic maintenance obligations found in a typical lease. Because NPI

performs these core governmental services for the MPEA pursuant to a contract, it is a government contractor within the ordinary meaning of that term.

¶ 23    Similarly, we reject Enriquez's argument that NPI was not "working" for the MPEA when it collected her biometric information. Essentially, her position is based on her assertions that "NPI does not report to the MPEA, does not perform tasks for the MPEA and does not draw wages or a salary from the MPEA." Much of Enriquez's argument is based on the same faulty premise that NPI does not perform services for the MPEA. However, Enriquez also acknowledges that " [t]he phrase 'contractor working for a local unit of government' refers to a contractor in some type of employment or services relationship *** with that unit of government.' " For the reasons previously explained, NPI does in fact perform services for the MPEA.

¶ 24    Moreover, while we are mindful that NPI does not directly receive payment from the MPEA (and rather pays a nominal rent of $1 per year), we do not see how this overrides the fact that NPI performs governmental services on behalf of the MPEA pursuant to a contract.[1] Enriquez's position is also undermined because, although NPI does not "report to" the MPEA, the MPEA retains a level of oversight beyond the typical landlord-tenant relationship. For example, the Agreement requires NPI to (1) operate Navy Pier in accordance with a Framework Plan developed in conjunction with the MPEA, (2) provide the MPEA with yearly financial operating statements and a balanced annual budget that conforms to the Framework Plan, and (3) maintain

---

[1] We also note that NPI has received some degree of public funding from the MPEA, including $220,000 in seed money, a $5million interest-free loan, vehicles and other property worth around $2.5 million, and $115 million for capital improvements at Navy Pier. *Better Government Ass'n v. Metropolitan Pier and Exposition Authority*, 2020 IL App (1st) 190697, ¶ 39, *vacated on other grounds*, 167 N.E.3d 657 (2021).

the MPEA chairperson, CEO, and a third person chosen by the MPEA as *ex offcio* voting members of its board of directors.

¶ 25 Finally, while not specifically contested by Enriquez, we note that NPI's actions that form the basis for the complaint were within the scope of its work for the MPEA. Enriquez's claims all stem from her employment with NPI, which employed her as part of its obligation to operate and manage Navy Pier. NPI's authority to hire personnel and set employee policies arose from its contract with the MPEA. Thus, we conclude that Enriquez's allegations against NPI concern actions of a government contractor performed while the contractor was working for the government. As such, NPI was exempted from the purview of the Act, and the circuit court did not err in dismissing the complaint.

¶ 26                             III. CONCLUSION

¶ 27 For the reasons stated, we affirm the judgment of the circuit court.

¶ 28 Affirmed.